

William M. Hogg (Cal. SBN 338196)
Alyssa J. White* (Tex. SBN 24073014)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com
awhite@mybackwages.com

* - To apply for admission *Pro Hac Vice*

*Counsel for Callis and the Straight Time Employees*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAVEN CALLIS**, Individually and for Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>**LEIDOS, INC.**, a Delaware for-profit corporation ,<br><br>    Defendant. | **Case No. 3:24-cv-00996-LL-MMP**<br><br>**FIRST AMENDED COLLECTIVE COMPLAINT FOR VIOLATIONS OF:**<br><br>(1)  Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*).<br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY**

1. Raven Callis ("Callis") brings this collective action to recover unpaid wages and other damages from Leidos, Inc. ("Leidos").

2. Leidos employed Callis as one of its Straight Time Employees (defined below) in and around San Diego, California, as well as in a number of other locations throughout the country such as Kansas, Nevada, Texas, and Kentucky.

3. Leidos pays Callis and its other Straight Time Employees by the hour.

4. Callis and the other Straight Time Employees regularly work more than 40 hours a workweek.

5. But Leidos does not pay Callis and its other Straight Time Employees overtime wages.

6. Instead, Leidos misclassifies Callis and the other Straight Time Employees as independent contractors and pays them the same hourly rate for all hours worked, including those overtime hours worked (Leidos's "straight time for overtime" pay scheme).

7. Indeed, Leidos uniformly misclassifies Callis and its other Straight Time Employees as exempt from overtime.

8. But Leidos never paid Callis and its other Straight Time Employees on a "salary basis" as required for any relevant exemption.

9. And Leidos applies its illegal straight time for overtime pay scheme to Callis and its other Straight Time Employees regardless of any individualized differences.

10. Leidos's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) and its implementing regulations by depriving Callis and other Straight Time Employees of the "time and a half" overtime premium they are owed for the hours they work over 40 in a workweek.

**JURISDICTION & VENUE**

11. This Court has original jurisdiction over Callis's claims pursuant to the 28

1  U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. §

2  216(b).

3      12.    The Court has specific personal jurisdiction over Leidos because it

4  purposefully availed itself of the benefits of the State by doing business in and employing

5  workers (like Callis and the other Straight Time Employees) in California.

6      13.    Venue is proper because a substantial portion of the events or omissions

7  giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

8      14.    Specifically, Leidos employed Callis and other Straight Time Employees in

9  San Diego, San Diego County, California.

10     15.    During weeks Callis and other Straight Time Employees worked in California,

11 they were paid straight time for overtime.

12                                  **PARTIES**

13     16.    Leidos employed Callis as a Trainer across the United States from

14 approximately August 2020 until June 2023, including in California and in and around San

15 Diego County.

16     17.    Leidos employed Callis in California in the summer and summer/fall of 2021

17 and again in 2022.

18     18.    Throughout her employment, Leidos willfully misclassified Callis as an

19 independent contractor to avoid paying her overtime wages.

20     19.    Instead, Leidos paid Callis straight time for overtime.

21     20.    That is, Leidos paid Callis the same hourly rate of pay for all hours worked,

22 including those hours worked in excess of 40 in a workweek.

23     21.    Callis brings this collective action on behalf of herself and other similarly

24 situated Straight Time Employees who worked for, or on behalf of, Leidos throughout

25 the United States who were subject to Leidos's illegal straight time for overtime pay

26 scheme. Callis's written consent is attached as **Exhibit 1**.

27     22.    Leidos misclassified each Straight Time Employee as an independent

28

-3-
FIRST AMENDED COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Callis v. Leidos, Inc.*, Case No. 3:24-cv-00996-LL-MMP

contractor and/or as exempt from overtime to avoid paying them overtime wages.

23.    Instead, Leidos paid each of the Straight Time Employees the same hourly rate for all hours worked, including those overtime hours worked, in willful violation of the FLSA.

24.    The putative collective of similarly situated employees is defined as:

**All current and former hourly Leidos employees who were subject to Leidos's straight time for overtime pay scheme at any time from May 3, 2021 (three years before the filing of Callis's Original Complaint) through final resolution of this Action (the "Putative Collective Members" or the "Straight Time Employees").**

25.    Leidos is a Delaware corporation headquartered in Reston, Virginia.

26.    Leidos may be served with process by serving its counsel of record, who have appeared in this Action.

### FLSA COVERAGE

27.    At all relevant times, Leidos was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

28.    At all relevant times, Leidos was an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203(r).

29.    At all relevant times, Leidos was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

30.    At all relevant times, Leidos has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

31.    At all relevant times, Callis and the other Straight Time Employees were Leidos's "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

32.    At all relevant times, Callis and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

33.    Leidos uniformly paid its Straight Time Employees the same hourly rates for all hours worked, including hours worked over 40 in a workweek.

34.    Leidos applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

35.    As a result of Leidos's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, includes Callis) did not receive overtime at the premium rates required by the FLSA.

36.    By paying straight time for overtime, Leidos did not pay its Straight Time Employees at least 1.5 times their regular rates for all hours worked over 40 in a workweek.

37.    Leidos's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

38.    Additionally, Leidos uniformly failed to pay the Straight Time Employees for travel time.

39.    This resulted in Callis and the other Straight Time Employees not receiving wages owed to them for travel time during their normal working hours that kept them away from home overnight, in violation of the FLSA. *See* 29 C.F.R. § 785.39.

## FACTS

40.    Leidos holds itself out as a "[k]ey player[] in government support, holding major contracts for civilian and defense agencies, including acquisition, delivery, and quantity agreements."[1]

41.    One such contract Leidos holds is the Defense Healthcare Management

---

[1] https://www.leidos.com/company/contract-vehicles (last visited April 30, 2024).

System Modernization (DHMSM) contract from the Department of Defense.[2]

42.    The DHMSM "is a $4.3B initiative to deliver a state-of-the-market electronic health record (EHR) system to the Military Health System (MHS)."[3]

43.    In 2017, Leidos began implementing its EHR software in MHS facilities and continues this process at present.[4]

44.    To meet its business objectives, Leidos hires employees, like Callis and the other Straight Time Employees, who it assigns to MHS and Leidos facilities across the United States, including in California, to train and support MHS medical providers in utilizing the EHR software.

45.    Leidos uniformly misclassifies Callis and the other Straight Time Employees as independent contractors to avoid paying them overtime for hours worked over 40 in a workweek.

46.    Indeed, Leidos has been sued multiple times in the past for the very straight time for overtime pay scheme alleged herein, as well as other schemes to violate the FLSA and related state wage-and-hour provisions.[5]

47.    However, Leidos's response to these lawsuits was not to modify its unlawful pay practices to comply with the FLSA and relevant state wage laws.

---

[2] https://www.usaspending.gov/award/CONT_IDV_N0003915D0044_9700 (last visited April 30, 2024).

[3] https://www.leidos.com/markets/health/military-health/mhs-genesis-program (last visited April 30, 2024).

[4] https://leidos.widen.net/s/gqkwrrd8wh/pdf-dhmsm-partnership-for-defense-health-fs-digital (last visited April 30, 2024).

[5] *See e.g.*, *Duchemin v. Leidos, Inc.*, No. 3:18-cv-00012-GPC-MDD (S.D. Cal. 2018); *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017); *Carrasco v. Leidos, Inc.*, No. 37-2017-00008847-CU-OE-CTL (Cal. Super. Ct., San Diego County); *Nash, et al. v. Leidos, Inc.*, No. 37-2017-00005058-CU-OE-CTL (Cal. Super. Ct., San Diego County); *Rosker v. Leidos, Inc.*, No. 37-2015-00005825-CU-OE-CTL (Cal. Super. Ct., San Diego County).

48.     Rather, Leidos has continued unlawfully paying its employees straight time for overtime but has attempted to offload its liability for unpaid overtime wages onto various staffing companies, including, but not limited to, ALKU, Blue Ridge Federal Consulting, and Ecco Select.

49.     Regardless of which staffing company Callis and the other Straight Time Employees receive their paychecks from, Leidos cannot offload its liability for unlawfully failing to pay Callis and the Straight Time Employees overtime for hours worked in excess of 40 in a workweek.

50.     Leidos controls all meaningful aspects of Callis's and the other Straight Time Employees' employment regardless of which staffing company happens to issue their paycheck.

51.     Leidos does not employ Callis and its other Straight Time Employees on a project-by-project basis.

52.     Rather, Leidos employs and treats Callis and its other Straight Time Employees as regular employees.

53.     Leidos controls Callis's and its other Straight Time Employees' rate and method of pay.

54.     Leidos requires Callis and the other Straight Time Employees to submit their hours worked each workweek through the timekeeping system Leidos selects and utilizes.

55.     Leidos approves or disapproves these hours each week.

56.     Callis and the other Straight Time Employees are paid only for the hours Leidos approves.

57.     On a weekly basis Leidos refuses to approve hours submitted by Callis and the other Straight Time Employees.

58.     Leidos refuses to approve their hours for reasons including, the submitted hours are not for a compensable task according to Leidos policy, the hours exceed the number of hours Leidos has preapproved for a particular task, or even because the

1    submitted hours do not utilize the proper Leidos task code.

2        59.    Leidos scrutinizes Callis's and the other Straight Time Employees' submitted

3    hours in detail to ensure the hours conform with Leidos policies and procedures before

4    approving them.

5        60.    And Callis and the other Straight Time Employees have little or no

6    opportunity to experience a profit or loss related to their employment.

7        61.    Their income from their work is limited to their hourly rate.

8        62.    Callis and the other Straight Time Employees do not share in Leidos's

9    financial success.

10       63.    Leidos controls Callis's and its other Straight Time Employees' schedules,

11    assignments, and work locations.

12       64.    Leidos assigns Callis and the other Straight Time Employees to work at MHS

13    and Leidos facilities across the United States.

14       65.    Leidos pays for Callis's and the other Straight Time Employees' travel

15    expenses, such as airfare and lodging.

16       66.    Leidos reimburses Callis and the other Straight Time Employees for other

17    expenses incurred while traveling based upon expense reports they submit to Leidos.

18       67.    Leidos pays Callis and the other Straight Time Employees a per diem while

19    they work away from home for food and incidentals.

20       68.    Leidos controls Callis's and its Straight Time Employees' work.

21       69.    Leidos requires Callis and its other Straight Time Employees to follow its

22    policies, procedures, plans, protocols, and specifications.

23       70.    Callis's and the other Straight Time Employees' work must strictly adhere to

24    the quality standards put in place by Leidos.

25       71.    Leidos requires that Callis and the other Straight Time Employees complete

26    what Leidos terms "Continuous Learning," which is ongoing training they must complete,

27    in the timeframe determined by Leidos.

28

72.    Callis and the other Straight Time Employees take direction from, and are supervised by, Leidos personnel.

73.    Callis and the other Straight Time Employees are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

74.    Callis and the other Straight Time Employees' daily and weekly activities are routine and largely governed by standardized plans, procedures, and checklists created by Leidos.

75.    Virtually every job function is predetermined by Leidos, including materials used to train and support the MHS medical providers, the Straight Time Employees' work schedule, and related work duties.

76.    Leidos is in the business of providing information technology training and support services for EHR software to MHS facilities.

77.    Callis and the other Straight Time Employees provide these services for Leidos.

78.    Without the job Callis and the other Straight Time Employees perform, Leidos would not be able to complete its business objective of implementing its EHR software in MHS facilities.

79.    The work Callis and the other Straight Time Employees perform is therefore an essential and integral part of Leidos's core business.

80.    Callis and the other Straight Time Employees rely on Leidos for work and compensation.

81.    Callis and the other Straight Time Employees cannot subcontract out the work they are assigned by Leidos.

82.    Callis and the other Straight Time Employees do not substantially invest in the materials required to complete the overall job to which they are assigned by Leidos.

83.    Rather, Leidos incurs the large-scale business and operating expenses like

1    payroll, marketing, equipment, and materials.

2    84.    Callis and the other Straight Time Employees do not market their services

3    while employed by Leidos.

4    85.    Leidos sets Callis's and the other Straight Time Employees' work schedules,

5    which effectively prohibits them from working other jobs while working for Leidos.

6    86.    Callis and the other Straight Time employees are not engaged in an

7    independently established trade, occupation, profession, or business of the same nature

8    as the service they perform for Leidos.

9    87.    In sum, the economic reality of the working relationship is that Callis and the

10    other Straight Time Employees are Leidos's employees under the FLSA.

11    88.    Leidos uniformly pays Callis and its other Straight Time Employees on an

12    hourly basis.

13    89.    Callis and the other Straight Time Employees regularly work more than 40

14    hours a workweek.

15    90.    But Leidos does not pay Callis and the other Straight Time Employees

16    premium overtime wages.

17    91.    Instead, Leidos pays Callis and its other Straight Time Employees the same

18    hourly rate for all hours worked, including their overtime hours.

19    92.    While exact job titles and job duties may differ, these employees are subjected

20    to the same or similar illegal straight time for overtime pay scheme for similar work.

21    93.    For example, Callis was employed by Leidos from approximately August

22    2020 through June 2023, and was assigned to work in different locations across the

23    country, including San Diego, Kansas City, Nevada, Texas, and Kentucky, among other

24    locations.

25    94.    Callis worked for Leidos as a Trainer in and around San Diego, California in

26    the summer and fall of 2021, as well as in other parts of California in 2022.

27

28

95.    As a Trainer, Callis's primary job duties included providing training and support to MHS medical professionals, based on training materials provided by Leidos, on how to utilize and integrate Leidos's EHR software into their treatment facilities.

96.    Callis additionally provided assistance to these medical providers during the first 30 days the software would "go live" into use in each facility.

97.    Callis has no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs.

98.    Callis's primary duties never included computer systems analysis, coding, programming, recommending hardware, or designing, testing, or modifying machine operating systems.

99.    Callis was Leidos's hourly employee.

100.    Specifically, Leidos paid Callis approximately $55 an hour.

101.    Callis reported her hours worked to Leidos each week.

102.    Leidos reviewed Callis's reported hours each week.

103.    After reviewing the hours, Leidos approved or disapproved the hours Callis submitted each week.

104.    Callis was only paid for hours Leidos approved.

105.    Leidos's records reflect the hours Callis submitted each week.

106.    Leidos's records also reflect the hours it approved or disapproved for Callis each week.

107.    Callis regularly worked more than 40 hours a week while employed by Leidos.

108.    But Leidos regularly approved for payment fewer hours than Callis actually worked in a workweek.

109.    In fact, Callis typically worked 10 to 12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

110.    During the summer and fall of 2021, Callis typically worked 45 to 48 hours per week on average at the Naval Hospital.

111.    Callis worked similar hours regardless of the location Leidos assigned her to work.

112.    Despite knowing Callis regularly worked overtime, Leidos did not pay her overtime wages for the hours she worked over 40 in a workweek.

113.    Instead, Leidos paid her under its uniform, illegal straight time for overtime pay scheme.

114.    Because of Leidos's uniformly applied straight time for overtime pay scheme, Callis never received the required "time and a half" overtime premium for the hours she worked over 40 in a workweek.

115.    Instead, Leidos paid Callis at the same hourly rate ($55) for all hours she worked—including her overtime hours—regardless of the location to which Leidos assigned her to work.

116.    Because of Leidos's uniformly applied straight time for overtime pay scheme, Callis did not receive the required "time and a half" overtime premium for the hours she worked over 40 in a workweek in willful violation of the FLSA.

117.    Leidos pays its other Straight Time Employees according to the same straight time for overtime pay scheme.

118.    Like Callis, Leidos pays its other Straight Time Employees on an hourly basis.

119.    Like Callis, Leidos requires its other Straight Time Employees to report their hours to Leidos.

120.    Like Callis, the other Straight Time Employees are only paid for the hours Leidos approves.

121.    Just as Leidos maintains records of the hours worked submitted by Callis, it also maintains records of the hours worked submitted by the other Straight Time Employees and the hours it approved and disapproved.

122.    And like Callis, Leidos regularly approved fewer hours than the other Straight Time Employees actually worked.

123. Leidos's records show the Straight Time Employees regularly work more than 40 hours a workweek.

124. Every Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period.

125. Indeed, like Callis, the Straight Time Employees typically work 10-12+ hours a day for 4-5 days a week (or 40 to 60+ hours a week).

126. Despite knowing its Straight Time Employees regularly work overtime, Leidos does not pay them premium overtime wages.

127. Instead, Leidos pays its Straight Time Employees the same hourly rate for all hours worked, including their overtime hours, in willful violation of the FLSA.

128. Leidos never paid Callis and its other Straight Time Employees on a "salary basis."

129. Leidos does not pay Callis and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

130. Indeed, if Callis and the other Straight Time Employees work fewer than 40 hours in a week, Leidos only pays them for the hours they actually work.

131. Thus, Leidos never paid Callis and the other Straight Time Employees on a "salary basis."

132. Because Leidos fails to pay Callis and its other Straight Time Employees on a "salary basis," these workers are all non-exempt employees entitled to premium overtime wages.

133. But Leidos does not pay Callis and its other Straight Time Employees premium overtime wages when they work more than 40 hours in a workweek.

134. Instead, Leidos pays Callis and its other Straight Time Employees under its uniform, illegal straight time for overtime pay scheme in willful violation of the FLSA.

135. Additionally, Leidos never pays hourly wages to Callis and its other Straight Time Employees for travel time to and from MHS and Leidos facilities across the United

1    States.

2    136.    Leidos schedules Callis and the other Straight Time Employees to work at

3    these facilities.

4    137.    And Leidos makes the travel arrangements and pays for flights to these

5    facilities and lodging while Callis and the other Straight Time Employees work at these

6    facilities.

7    138.    But Leidos does not provide hourly compensation for any travel time by

8    Callis and the other Straight Time Employees (Leidos's "nonpayment of travel time

9    policy").

10    139.    Leidos uniformly applies this nonpayment of travel time policy to Callis and

11    the other Straight Time Employees.

12    140.    And Leidos requires Callis and the other Straight Time Employees to travel

13    away from home overnight.

14    141.    Leidos's uniform application of its nonpayment for travel time policy

15    deprives Callis and the other Straight Time Employees of wages for travel time for travel

16    that keeps them away from home overnight, in violation of the FLSA. *See* 29 C.F.R. §

17    785.39.

18    ### 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

19    142.    Callis incorporates all other paragraphs by reference.

20    143.    Callis brings her claims as a collective action on behalf of herself and the other

21    Straight Time Employees pursuant to 29 U.S.C. § 216(b).

22    144.    Like Callis, the other Straight Time Employees are victimized by Leidos's

23    illegal straight time for overtime pay scheme.

24    145.    Other Straight Time Employees worked with Callis and indicated they were

25    paid in the same manner, performed similar work, and were subject to Leidos's same

26    illegal straight time for overtime pay scheme.

27    146.    Based on her experience with Leidos, Callis is aware Leidos's illegal straight

28

time for overtime pay scheme was imposed on the other Straight Time Employees.

147.   The putative class of Straight Time Employees is so numerous that the joining of all class members in one lawsuit is impractical.

148.   The Straight Time Employees are known to Leidos and can be readily identified through Leidos's business and personnel records.

149.   The Straight Time Employees are similarly situated in the most relevant respects.

150.   Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to their overtime wages.

151.   Rather, the putative collective of Straight Time Employees is held together by Leidos's illegal straight time for overtime pay scheme, which systematically deprived Callis and the Straight Time Employees of overtime wages.

152.   Leidos's records reflect the number of hours Callis and the other Straight Time Employees recorded working "on the clock" each week and the number of hours worked that Leidos approved each week.

153.   Leidos's records also show it paid its Straight Time Employees "straight time," instead of "time and a half," for their overtime hours it approved.

154.   The back wages owed to Callis and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

155.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Leidos's records, and there is no detraction from the common nucleus of liability facts.

156.   Therefore, the issue of damages does not preclude collective treatment.

157.   And Callis's experiences are therefore typical of the experiences of the other Straight Time Employees.

158.   The common questions of law and fact include:

a.   Whether Leidos misclassified Callis and the Straight Time Employees as "independent contractors" rather than as employees under the FLSA;

b.   Whether Callis and the Straight Time Employees were in business for themselves, or whether they were dependent on Leidos for their livelihoods and thus Leidos's employees under the FLSA;

c.   Whether Leidos provided direction and/or exercised control over Callis and the Straight Time Employees in performance of their work for Leidos;

d.   Whether Leidos's capital investment into its business outweighed the investment Callis and the Straight Time Employees made, if any;

e.   Whether Callis's and the Straight Time Employees' job duties required specialized skills and initiative resembling that of an independent business;

f.   Whether Callis and the Straight Time Employees worked for Leidos continuously or for long periods of time;

g.   Whether the job performed by Callis and the Straight Time Employees was an integral party of Leidos's business;

h.   Whether Straight Time Employees' business was not in Leidos's usual course of business;

i.   Whether Straight Time Employees are customarily engaged in an independent trade of business;

j.   Whether Callis and the Straight Time Employees are non-exempt employees entitled to premium overtime wages;

k.   Whether Leidos's straight time for overtime pay scheme

satisfies the "salary basis" test;

l.    Whether Leidos's straight time for overtime pay scheme deprived the Straight Time Employees of premium overtime wages they are owed under the FLSA;

m.    Whether Callis's and Straight Time Employees' travel time is compensable under the FLSA;

n.    Whether Leidos's decision to misclassify the Straight Time Employees as independent contractors was willful;

o.    Whether Leidos's decision to misclassify the Straight Time Employees as independent contractors was made in good faith;

p.    Whether Leidos's decision to misclassify the Straight Time Employees as exempt was made in good faith;

q.    Whether Leidos's decision not to pay the Straight Time Employees overtime was made in good faith; and

r.    Whether Leidos's violations were willful.

159.    Callis knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

160.    As part of its regular business practices, Leidos intentionally, willfully, and repeatedly violated the FLSA with respect to Callis and the other Straight Time Employees.

161.    Leidos's illegal straight time for overtime pay scheme uniformly deprived Callis and the other Straight Time Employees of the overtime wages they are owed under the FLSA.

### LEIDOS'S VIOLATIONS OF CALIFORNIA LAW WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

162.    Callis incorporates all other paragraphs by reference.

163.    Leidos's misclassification of Callis and the other Straight Time Employees as independent contractors and/or as exempt from overtime was designed to mask its violation of the FLSA.

164.    Leidos's decision to misclassify Callis and the other Straight Time Employees as independent contractors and/or as exempt from overtime was neither reasonable, nor was it made in good faith.

165.    Leidos knew it was subject to the FLSA's overtime provisions.

166.    Leidos knew the FLSA required it to pay non-exempt employees, including Callis and the other Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

167.    Leidos knew each Straight Time Employee worked more than 40 hours in at least one workweek during the 3 years before Callis's Original Complaint was filed because it required them to report their hours worked and Leidos reviewed and approved or disapproved these hours.

168.    Leidos knew Callis and the other Straight Time Employees were its hourly employees.

169.    Leidos knew it paid Callis and the other Straight Time Employees on an hourly basis.

170.    Leidos knew it paid Callis and the other Straight Time Employees straight time for overtime.

171.    Leidos knew it did not pay Callis and the other Straight Time Employees on a "salary basis."

172.    Leidos knew it did not pay Callis and the other Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

173.    Leidos knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

174.    Leidos knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to Callis and the other Straight Time Employees.

175.    Nonetheless, Leidos uniformly misclassified Callis and its other Straight Time Employees as exempt employees and refused to pay them overtime wages.

176.    Leidos's decision to misclassify Callis and its other Straight Time Employees as exempt employees was neither reasonable, nor was it made in good faith.

177.    Leidos's failure to pay Callis and its other Straight Time Employees overtime wages was neither reasonable, nor was its decision not to pay these non-exempt employees overtime wages made in good faith.

178.    Leidos knew the FLSA required it to pay Callis and the other Straight Time Employees for travel away from home.

179.    Leidos's failure to pay Callis and its other Straight Time Employees wages for travel time away from home was neither reasonable, nor was its decision not to pay for such travel time made in good faith.

180.    Leidos knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

181.    Leidos knowingly, willfully, and/or in recklessly disregard carried out its illegal straight time for overtime pay scheme that systematically deprived Callis and the other Straight Time Employees of overtime wages in violation of the FLSA.

182.    Indeed, Leidos has been sued previously for its straight time for overtime pay scheme in violation of the FLSA and related state wage laws. *See e.g.*, *Duchemin v. Leidos, Inc.*, No. 3:18-cv-00012-GPC-MDD (S.D. Cal. 2018); *Tatum v. Leidos Health, LLC*, No. 1:19-cv-03298-AT (N.D. Ga. 2019); *Rancher v. Leidos Health, LLC*, No. 1:18-cv-04468-JPB (N.D. Ga. 2018); *Oshikoya v. Leidos Health, LLC*, No. 1:17-cv-03237-RLM-DLP (E.D. Va. 2017); *Carrasco v. Leidos, Inc.*, No. 37-2017-00008847-CU-OE-CTL (Cal. Super. Ct., San Diego County); *Nash, et al. v. Leidos, Inc.*, No. 37-2017-00005058-CU-OE-CTL (Cal. Super. Ct., San Diego County); *Rosker v. Leidos, Inc.*, No. 37-2015-00005825-CU-OE-CTL

(Cal. Super. Ct., San Diego County).

183. In sum, Leidos's violations were willful, carried out in bad faith, and caused significant damage to Callis and the other Straight Time Employees.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA Collective Action)

184. Callis incorporates all other paragraphs by reference.

185. Callis brings her FLSA claim as a collective action on behalf of herself and the Straight Time Employees throughout the United States pursuant to 29 U.S.C. § 216(b).

186. Leidos violated, and is violating, the FLSA by employing non-exempt employees (Callis and the other Straight Time Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

187. Accordingly, Callis and the Straight Time Employees are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages.

188. Finally, Leidos is also liable to Callis and the other Straight Time Employees for their reasonable attorneys' fees and costs incurred in this action.

### RELIEF SOUGHT

WHEREFORE, Callis, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Putative Collective Members pursuant to 29 U.S.C. § 216(b) apprising them of their rights and permitting them to join this action by filing a written notice of consent;

b. An Order appointing Callis and her counsel to represent the interests of the

Straight Time Employees;

c.    An Order finding Leidos liable to Callis and the other Straight Time Employees for their unpaid overtime wages, plus liquidated damages in an amount equal to their unpaid wages;

d.    A Declaratory Judgment that Leidos violated the FLSA;

e.    A Declaratory Judgment that Leidos violated the FLSA willfully;

f.    Judgment awarding Callis and the other Straight Time Employees all unpaid wages, overtime wages, liquidated damages, and any other penalties available under the FLSA;

g.    An Order awarding attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b);

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Date: June 24, 2024                    Respectfully submitted,

                                       **JOSEPHSON DUNLAP LLP**

                                       /s/ William M. Hogg
                                       William M. Hogg
                                       Alyssa J. White (*Pro Hac Vice* forthcoming)

                                       *Counsel for Callis and the Straight Time Employees*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Callis hereby demands a jury trial on all claims and issues, as she and the other Straight Time Employees are entitled to a jury.

Date: June 24, 2024                    Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

/s/ William M. Hogg
William M. Hogg
Alyssa J. White (*Pro Hac Vice* forthcoming)

*Counsel for Callis and the Straight Time Employees*